6/27/06 received
Gilbert S. Merritt

BEFORE A CIRCUIT JUDGE
OF THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

2006 JUN 27 PM 11:49

| | | |
|---|---|---|
| SEDLEY ALLEY,<br><br>Petitioner,<br><br>v.<br><br>RICKY BELL, Warden,<br>Riverbend Maximum Security<br>Institution,<br><br>Respondent. | ) | No. 3:06-0646 |

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2241 AND/OR FOR WRIT OF HABEAS CORPUS *AD SUBJICIENDUM*

*To The Honorable Gilbert S. Merritt, Circuit Judge For The United States Court Of Appeals For The Sixth Circuit.*

## I. JURISDICTION

1. Petitioner Sedley Alley invokes this Court's habeas corpus jurisdiction solely under 28 U.S.C. §2241(a), 2241(b), and §2241(c)(3), and alternatively seeks a common law writ of habeas corpus *ad subjiciendum*. This application is made to the Circuit Judge given exigent circumstances and the issues involved. In addition, the District Court has a general policy of transferring habeas corpus petitions to the district of conviction. Given exigent circumstances, such a transfer would impede Petitioner's ability to have his petition heard at all.

## II. THE PARTIES

2. Petitioner Sedley Alley is incarcerated under sentence of death in the custody of Respondent Ricky Bell, Warden of the Riverbend Maximum Security Institution in Nashville, Tennessee.

## III.
## VENUE

3. This petition is properly presented to the Circuit Judge, as Your Honor is a Circuit Judge of the United States Court of Appeals for the Sixth Circuit. Under 28 U.S.C. §2241(a) a circuit judge may issue a writ within his or her respective jurisdiction. Tennessee is within the Circuit Judge's jurisdiction. See Bowen v. Johnston, 55 F.Supp. 340, 341 (N.D.Cal. 1944)(circuit judge's jurisdiction to issue writ exists within states of judge's circuit).

## IV.
## STATEMENT OF THE CASE

4. In 1987, in the Criminal Court of Shelby County, Tennessee, Sedley Alley was convicted of first-degree murder, kidnaping, and rape and sentenced to death and life imprisonment.

5. The Tennessee Supreme Court affirmed his convictions and sentences. State v. Alley, 776 S.W.2d 506 (Tenn. 1989).

6. The United States Supreme Court denied certiorari. Alley v. Tennessee, 493 U.S. 1036 (1990).

7. After exhausting state court post-conviction remedies, Sedley Alley filed a petition for writ of habeas corpus in the United States District Court for the Western District of Tennessee. The District Court denied relief. Alley v. Bell, 101 F.Supp.2d 588 (W.D. Tenn. 2000).

8. On appeal, the Sixth Circuit affirmed, Alley v. Bell, 307 F.3d 380 (6th Cir. 2002), and the Supreme Court denied certiorari. Alley v. Bell, 540 U.S. 839 (2003).

9. Sedley Alley later filed a motion for equitable relief from judgment. Alley v. Bell, W.D.Tenn. No. 97-3159. R. 158, Second Amended Motion For Equitable Relief. After the District Court granted a stay, the Sixth Circuit ultimately remanded for the District Court to review the

motion on the merits. Alley v. Bell, 405 F.3d 371 (6th Cir. 2005)(en banc). On remand, the District Court denied relief, and, as of the time of drafting this habeas petition, a certiorari petition is now currently pending before the United States Supreme Court.

10. Included in the proceedings currently pending on certiorari are issues relating to fraud, misrepresentation, and misconduct which prohibited Sedley Alley from fully and fairly litigating *Brady* claims arising from the prosecution's withholding of material exculpatory, as described *infra*.

## V. EXHAUSTION OF STATE REMEDIES

11. Petitioner currently lacks any available remedy for his claims of constitutional error in the state courts of Tennessee. Under Tennessee law, the judicial remedy for constitutional claims is a motion to reopen post-conviction proceedings under §40-30-217 *et seq*. A petitioner must actually have in his possession new scientific evidence of actual innocence before being able to file a motion to reopen on constitutional grounds. Ray v. State, 984 S.W.2d 236 (Tenn.Cr.App. 1997). Also, a petitioner cannot raise a *Brady* claim in a motion to reopen. Harris v. State, 102 S.W.3d 587 (Tenn. 2004). Thus, at present, there is no available judicial remedy in Tennessee by which Petitioner can obtain relief on the constitutional claims presented in this petition for writ of habeas corpus. See also House v. Bell, 547 U.S. ___ (2006).

## VI.
## CONSTITUTIONAL CLAIMS FOR RELIEF

### a.
### Sedley Alley Is Entitled To Habeas Corpus Relief Under The Eighth And Fourteenth Amendments Because He Is Actually Innocent Of The Offenses For Which He Has Been Convicted

12. Sedley Alley is actually innocent of the offenses for which he has been convicted and sentenced to death. See Herrera v. Collins, 506 U.S. 390 (1993).

13. Sedley Alley is actually innocent, given all the proof that could be adduced concerning his guilt or innocence. He is innocent, and/or no reasonable juror would have convicted him of capital murder, rape, or kidnaping, or imposed the death sentence had any juror weighed the following evidence which demonstrates his actual innocence.

14. Sedley Alley can establish his actual innocence through DNA testing of evidence found at the crime scene and/or on the victim. Such testing will establish that another male (almost certainly John Borup, the victim's boyfriend) actually killed the victim. Such DNA testing will confirm Sedley Alley's innocence as also established by proof of alibi (which was withheld by the state until recently), and will establish that Alley's statement to the authorities is, in fact, a false confession.

15. Specifically, redundant DNA test results (identical male DNA profiles on numerous, different items of evidence) will establish that skin cells, urine, blood, saliva, and other bodily fluids found at the crime scene and on the victim come another male (likely Borup), a man who, as explained in ¶ 17b, below, had motive and opportunity to kill the victim. DNA that will provide such results is found, *inter alia*, on the following items of evidence recovered at the crime scene:

a. Red underwear found at the scene: The prosecution maintained that this underwear was worn by the male who assaulted and killed the victim. When subjected to DNA testing, this underwear will yield usual-wearer DNA (from, among other things, skin cells or urine) which will identify the person who routinely wore this underwear. DNA results from this sample will conclusively identify the man who assaulted and killed the victim. See Appendix 1 (perpetrator's red underwear from the scene).

b. The victim's T-Shirt (Trial Exhibit 2): The shirt contains, at least, mucous or other biological material in a stain on the front of the shirt to the left of a Marine Corps Insignia, and potential blood on the back of the shirt, all of which can be subjected to DNA analysis to identify the perpetrator. See Appendix 2 (Victim's T-Shirt).

c. The stick which was inserted into the victim: The stick contains blood and numerous hairs, possibly semen, and likely skin cells or sweat from the perpetrator who handled the stick, all of which can be subjected to DNA analysis to identify the person who killed the victim. See Appendix 3 (stick).

d. The paper in which the stick was wrapped: The wrapper contains a number of fluid stains, including one or more which appear to contain a mixture of blood and/or semen which can be subjected to DNA testing to identify the perpetrator. See Appendix 4 (wrapper from stick).

e. Fluid-stained grass from beneath the victim's vaginal area: This sample contains fluids which drained from the victim after she was sexually assaulted. These samples would contain blood, semen, and/or other bodily fluids which can be subjected to DNA testing to identify the perpetrator. See Appendix 5 (fluid-stained grass)

f. The victim's underwear: The victim's underwear also contains stains which contain biological samples which can through DNA testing identify the person who sexually assaulted and killed her. See Appendix 6 (victim's underwear).

g. The victim's bra: The victim's bra also contains biological stains, which, once again, can be subjected to DNA analysis to identify the actual killer. See Appendix 7 (victim's bra).

h. Victim's left shoe: The victim's left shoe contains a potential blood stain on the right side, as well as a hair with a root on the sole. When subjected to DNA testing, the blood and hair can identify the person who left such materials on the shoe. See Appendix 8 (victim's left shoe).

I. Victim's right shoe: The victim's right shoe also contains biological samples, including possible blood spots and a biological stain on the sole. These can be subjected to DNA analysis to identify the killer. See Appendix 9 (victim's right shoe).

j. Victim's sock: The victim's sock contains not only an apparent blood stain, but also hairs, all of which can be subjected to DNA analysis to identify the true killer. See Appendix 10 (victim's sock).

k. Victim's exercise belt: This contains hairs and other biological samples which can be subjected to DNA analysis to identify the real killer. See Appendix 11 (victim's exercise belt).

l. Victim's jogging shorts: These may contain biological samples of blood which, through DNA testing, could identify the killer as well. See Appendix 12 (shorts).

m. Styrofoam cup: This was found at the crime scene near the victim and can be subjected to DNA analysis to identify who left saliva on such items and/or touched such items, leaving DNA on such items. See Appendix 13 (styrofoam cup).

n. Beer bottles: These items, which were found near the place where the body was found, can also be subjected to DNA analysis to identify who touched such bottles and/or who left saliva on such bottles. See Appendix 14 (beer bottles).

o. DNA testing of the above evidence will produce redundant results which will establish that another male, including John Borup – not Sedley Alley – killed the victim. See also Appendix 15 (crime scene photograph and crime scene diagram showing location of items recovered at scene).[1]

16. DNA testing will establish Sedley Alley's actual innocence, because:

a. Redundant results establishing Borup as the usual wearer of the red underwear and the donor of DNA samples found on the victim's clothing, the stick inserted into the victim, and the grass at the crime scene, will conclusively establish that Sedley Alley did not kill the victim. Such redundant results have exonerated many actually innocent persons. See Appendix 18 (DNA

---

[1] In addition, at some point additional evidence existed (and may still exist) that could have been (or may still be able to be) subjected to DNA testing and through redundant results establish the perpetrator. State officials have told Alley that this evidence no longer exists, but they have not verified their statements. This evidence includes:

a. Vaginal swabs from the victim (Appendix 16: Item 11: Semen detected);
b. Swab taken from the victim's right inner thigh (Appendix 16: Item 12: Semen detected);
c. Swab taken from the victim's left inner thigh (Appendix : Item 13: Semen detected);
d. Nasopharyngeal swabs from the victim (Appendix 17: Item 3: Semen detected);
e. Oral swabs from the victim (Appendix 17, Item 4);
f. Rectal swabs from the victim (Appendix 17, Item 5);
g. A caucasian body hair found on the victim's waistband (Q6);
h. A caucasian pubic hair found on the victim's left shoe (Q1);
i. A hair found on a stick found in the victim; (Search Warrant Affidavit, July 17, 1985 ("hair was found on an instrument" used in sexual assault));
j. Fingernail scrapings from the victim (Appendix 16, Item 14).

scenarios proving Sedley Alley's actual innocence).

b. Indeed, as fully explained in materials contained in the appendix accompanying this petition, DNA testing which has yielded redundant results has led to the exoneration of many persons, including:

1) Douglas Warney, who was actually innocent, but convicted based on a false confession (Appendix 19);

2) Ray Krone, who was convicted of capital murder but exonerated when saliva on the victim's shirt didn't match his, but matched a serial sex offender (Appendix 20);

3) Frank Lee Smith, who presented an insanity defense and was sentenced to death, but who was posthumously exonerated when DNA testing identified the true perpetrator as serial murderer Eddie Lee Mosley (Appendix 21);

4) Nicholas Yarris, who was exonerated based on redundant DNA results: DNA from semen on the victim's underwear matched DNA from beneath the victim's fingernails (Appendix 22);

5) Calvin Willis, who was exonerated where DNA from the perpetrator's boxer shorts matched DNA from the victim's fingernails, and the DNA excluded Willis (Appendix 23);

6) Chris Ochoa, who was exonerated after pleading guilty and being convicted based on a false confession, but where DNA identified the true perpetrator, Achim Marino (Appendix 24);

7) Clark McMillan, who was exonerated when DNA tests on semen excluded him and identified the true perpetrator as a serial rapist (Appendix 25);

8) Bruce Godschalk, who also was exonerated based on DNA testing, after having been convicted based on a false confession (Appendix 26);

9) Earl Washington, also exonerated after being convicted based on a false confession (Appendix 27);

10) Larry Peterson, exonerated through DNA testing in a rape-murder which, like this case, involved the victim having a stick inserted inside her (Appendix 28).

c. In addition, DNA results also can be run through the CODIS database to identify the actual killer by that means as well.

17. There is also substantial additional evidence which, in conjunction with DNA proof, establishes that Sedley Alley is actually innocent, including proof that Alley has an alibi (the victim was killed when his whereabouts were known by authorities) and that Borup killed the victim. Such additional evidence of actual innocence includes:

a. Proof of Alibi:

1) A Shelby County Sheriff's Department Report from Sergeant Jim Houston (withheld from Alley until 2005) recounts that Dr. James Spencer Bell, M.D. (who examined the victim at the scene) declared that the victim "had been d[ea]d approximately six (6) hours when he saw the body and made the crime scene at 9:30 AM, 7-12-85." Appendix 29 (Report of Sergeant Jim Houston).[2]

---

[2] Sedley Alley first obtained Sergeant Houston's report on April 1, 2005. He expeditiously informed Respondent Bell of the improper withholding of this exculpatory document when, on June 17, 2005, he amended his pending motion for relief from judgment to identify this document as having been withheld in violation of *Brady* and as requiring relief from judgment requiring the reopening of his initial habeas petition on his *Brady* claims. <u>See</u> *Alley v. Bell*, W.D.Tenn. No. 97-3159, R. 158, Second Amended Motion For Equitable Relief, p. 26 & Ex. 2.

2) Handwritten notes from Dr. James Spencer Bell (withheld from Alley until 2004) confirm that the victim died at 3:30 a.m. on July 12, 1985, and no earlier than 1:30 a.m. that day. Appendix 30 (Handwritten Notes Of Dr. James Spencer Bell, M.D.).[3]

3) Sedley Alley, however, was picked up for questioning by Naval Investigative Service authorities at 12:10 a.m. on July 12, 1985. Appendix 31 (Radio Log).

4) Sedley Alley was released at 1:00 a.m. on July 12, 1985. Id.

5) Sedley Alley went home, and was under surveillance as of 1:27 a.m. on July 12, 1985. Id.

6) Sedley Alley remained at home until he was subsequently arrested at his home at approximately 7:00 a.m. on July 12, 1985.

7) Sedley Alley, therefore, simply could not have committed the murder as it occurred at a time when Alley's whereabouts is undisputed. See Appendix 32 (Declaration of Dr. Walter Hofman (victim died rapidly upon receiving injuries)); Appendix 33 (Timeline).

b. Proof That John Borup – Not Sedley Alley – Is The Person Who Killed The Victim. There is also significant evidence that the victim's boyfriend – who had motive and opportunity to kill the victim – was the person who killed the victim: "When identity is in question, motive is key." House v. Bell, 2006 U.S. LEXIS 4675 p.*40.

1) Scott Lancaster described the abductor as caucasian, about 5'8," with

[3] Sedley Alley first obtained Dr. Bell's withheld notes on January 12, 2004, and he informed Bell of the improper withholding of this document when, on May 12, 2004, he amended his pending motion for equitable relief from judgment, identifying these notes as having been withheld in violation of *Brady* and as requiring relief from judgment. See *Alley v. Bell*, W.D.Tenn. No. 97-3159, R. 129, First Amended Motion For Equitable Relief, p. 29 accompanying Ex. 5 (Bell notes) & Ex. 6 (affidavit of April Higuera).

short, dark brown hair, a dark complexion, and black shorts. Appendix 34 (Statement of Scott Lancaster).

2) Borup fits that description, (Appendix 35 (Affidavit of April Higuera)), and Borup's description was known to authorities investigating this case.

3) Sedley Alley does not: Alley is 6'4", weighed 200 pounds at the time, had medium to long light reddish-brown hair, a mustache and beard, medium complexion, and was wearing blue jean shorts. See Appendix 36 (booking photograph of Alley); Appendix 37 (description of Alley at time of arrest).

4) Comparing the relevant information, it is clear that Sedley Alley was not the person identified by Lancaster as the abductor, but that Borup fits the description:[4]

| | **Abductor** | **Sedley Alley** |
|---|---|---|
| Height & Build | 5'8", Medium Build | 6'4", Slender Build |
| Hair Color | Dark Brown | Light Reddish-Brown |
| Hair Length | Short | Medium to Long |
| Complexion | Dark Complexion | Medium Complexion |
| Facial Hair | None Noted | Mustache & Beard |
| Clothing | Black Shorts | Blue Jean Shorts |

5) Borup has admitted that he was on the base with the victim that night, confirming that he drove her to the base. See Appendix 35, ¶6 (Affidavit of April Higuera). He also had motive: The victim was leaving the next day to go to California to be with her fiancee.

6) In addition, Borup drove a Dodge Aspen station wagon – the type of

[4] This chart summarizes information contained in Lancaster's statement, Alley's booking photo, and the description of Alley at the time of his arrest.

vehicle identified by eyewitnesses who were jogging at the time. See Tr. 163 (Mark Shotwell: station wagon); Appendix 35, ¶6 (Affidavit of April Higuera); Appendix 38 (picture of Dodge Aspen).

7) Indeed, Chief Richard Rogers made clear that the car involved in the abduction was initially described as a "brown over brown station wagon," which does not describe Sedley Alley's car, but describes the car Borup drove. Appendix 39 (Statement of Richard Rogers).

8) Borup's driving a brown Aspen station wagon is especially significant, as it is clear that the *tire tracks found at the abduction scene were not made by Sedley Alley's car*. Indeed, in light of revelations about Borup, tire track expert Peter McDonald has been asked to review tire tracks at the abduction scene, and he makes clear that those tire tracks are not from Sedley Alley's car. See Appendix 40 (Report of Peter McDonald); Appendix 41 (Supplemental Report of Peter McDonald); Appendix 42 (tire tracks at abduction scene).

c. The Unreliability Of Evidence Used To Convict Alley: Additional proof that Sedley Alley is actually innocent includes proof that the statement obtained by authorities from Sedley Alley was coerced and not true. Sedley Alley was arrested at approximately 7:00 a.m. on July 12, 1985, and subjected to hours of interrogation before he finally broke down and gave a statement to authorities hours later. Even then, his statement is unreliable and inaccurately states vital details about the death of the victim. As nationally-known expert Richard Leo has opined (much as he did in the case of Douglas Warney, who was exonerated after a false confession), Sedley Alley's statement bears the hallmarks of a false confession. See Appendix 43, Affidavit of Dr. Richard Leo, Ph.D.. Indeed, even the Tennessee Supreme Court recognized that it is false in material respects. State v. Alley, 776 S.W.2d 506, 509 n.1 (Tenn. 1989). Further, the taped statement doesn't even match the purported length of the statement, thus indicating that the contents of the statement were

manipulated by authorities. Compare Appendix 44 (Interrogation log) with Appendix 45 (Affidavit of Janet Santana).

d. Additional evidence of innocence is established by a second affidavit from April Higuera, which identifies proof indicating that Sedley Alley is innocence. See Appendix 46.

18. Sedley Alley is actually innocent under *Herrera* and he is entitled to discovery, a hearing, and writ of habeas corpus relieving him from his convictions and sentences. Because he has been unable to obtain relief for actual innocence through the state courts and/or the Tennessee Governor, he is entitled to proceed on his claim in the federal courts, and is entitled to relief under *Herrera*.

**b.**
**Sedley Alley Was Convicted And Sentenced In Violation Of His Right To Due Process Under The Eighth And Fourteenth Amendments: The Prosecution Withheld Material Exculpatory Evidence Establishing That Sedley Alley Is Actually Innocent Of The Murder And The Other Offenses For Which He Was Convicted**

19. In violation of the Eighth and Fourteenth Amendments, the prosecution withheld material exculpatory evidence establishing that Sedley Alley is actually innocent of the offenses for which he has been convicted.

20. In this petition, Sedley Alley identifies evidence as being withheld and material, although he is unsure at this time whether there is any other additional evidence which the prosecution failed to disclose. To the extent that Mr. Alley has not received, nor is aware of, additional material, exculpatory evidence which has yet to be disclosed to him, he cannot identify such evidence in this petition.

21. Material, exculpatory evidence which was withheld from Mr. Alley includes, but is

not limited to, the following exculpatory evidence:

a. Sergeant Houston's report in which Dr. Bell establishes 3:30 a.m. as the time of death. See ¶17a1, *supra*.

b. Dr. Bell's notes concerning the time of death. See ¶17a2, *supra*.

c. Information in the possession of the Naval Investigative Service (N.I.S.), who interviewed the victim's boyfriend, John Borup on July 17, 1985. Specifically, information in the possession of N.I.S. as a result of that interview included Borup's physical description and Borup's account of his being with the victim the night she was murdered and having had the victim in his car that night. See Appendix 35 (Affidavit of April Higuera).

d. Proof that two questioned hairs (Q1: found on the inside sole of the victim's shoe) and (Q6: found on the victim's waistband) were compared to Sedley Alley's hair and determined not to match Alley. It appears that Craig Lahren compared Q1 and Q6 to Sedley Alley's hairs but did not match them to Alley.

22. All of the evidence identified in ¶21 is material and exculpatory, because it establishes that Sedley Alley is actually innocent of the offenses for which he has been convicted and sentenced to death. Specifically, all of this evidence establishes that Sedley Alley did not commit the offense, because the victim was killed at a time when Sedley Alley's whereabouts were well-known, Borup fits the description of the person who abducted the victim, and other evidence excludes Sedley Alley's guilt.

23. In particular, the evidence withheld by the prosecution establishes that Sedley Alley is actually innocent of the murder, while indicating that the offense was committed by the victim's boyfriend Borup, a man who had motive and opportunity to kill the victim. The withheld evidence

establishes a clear alibi, while pointing to Borup as the killer. See ¶17a,b, *supra*.

24. There is a reasonable probability that, absent the withheld evidence about the time of death and about Borup, Sedley Alley would not have been convicted of the offenses for which he was convicted, nor would he have been sentenced to death.

25. Sedley Alley is therefore entitled to habeas corpus relief, because he was denied his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

**c.**
**Sedley Alley Was Denied The Effective Assistance Of Counsel**

26. Sedley Alley incorporates by reference, in their entirety, ¶¶1-25 in support of this claim.

27. In violation of the Sixth, Eighth, and Fourteenth Amendments, counsel for Sedley Alley unreasonably failed to fully investigate the forensic evidence to establish that Sedley Alley is actually innocent of the offenses for which he has been convicted.

28. *Inter alia*, counsel failed to investigate the time of death and establish Sedley Alley's actual innocence through alibi (See ¶¶17a, *supra*); counsel failed to establish that someone other than Alley (including Borup) was the person responsible for the victim's death, including based on the description of the abductor; failed to establish that the original description of the car was brown-over-brown, which does not describe Sedley Alley's car; failed to investigate the tire tracks at the scene of the abduction to show they did not come from Sedley Alley's car; failed to show that shoe prints found at the scene did not match Sedley Alley's shoes; failed to investigate and argue the forensic evidence of semen and other bodily fluids and hairs found on the victim and/or at the crime

scene or on evidence at the crime scene excluded Alley as the perpetrator and/or otherwise established his innocence(See ¶15, *supra* (incorporated by reference)); failed to show that Sedley Alley's statement to the police was manipulated and unreliable(See Appendix 43: Report of Richard Leo, Ph.D; Appendix 44: Interrogation Log; Appendix 45: Affidavit of Janet Santana); and relied on an unreliable defense of insanity which, as the courts have found, was predicated on unreliable hypnosis and sodium amytal interviews.

29. There is a reasonable probability that, had counsel fully investigated any and all evidence establishing that Sedley Alley was not the person who committed the offenses charged (including the evidence presented in this petition), Sedley Alley would not have been convicted of the offenses for which he has been convicted and sentenced to death.

30. Sedley Alley's conviction and sentence violate the Sixth, Eighth, and Fourteenth Amendments.

CONCLUSION AND PRAYER FOR RELIEF

31. WHEREFORE, your Honor should grant Sedley Alley discovery to establish the constitutional violations identified in this petition, including discovery of all items identified in ¶ 15, such that Mr. Alley can conduct independent, reliable DNA analysis of all such evidence to establish his actual innocence.

32. Your Honor should also grant Sedley Alley an evidentiary hearing at which he can establish his entitlement to habeas corpus relief on the claims presented in this petition.

33. Your Honor should also grant Sedley Alley habeas corpus relief, declaring his convictions and sentences, including his death sentence, unconstitutional as violating the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

34. Your Honor should also grant any other relief which is appropriate and just under the circumstances.

Respectfully Submitted,

Paul R. Bottei
Office of the Federal Public Defender
Middle District of Tennessee
810 Broadway, Suite 200
Nashville, Tennessee 37203
(615) 736-5047
FAX (615)736-5265

Paul R Bottei

## CERTIFICATE OF SERVICE

I affirm that a copy of the foregoing has been forwarded to Joe Whalen, 425 Fifth Avenue North, Nashville, Tennessee 37202, this the 27th day of June, 2006.

Paul R Bottei